**In the Matter of the WELFARE OF A.K., Child.**

**No. CX–85–641.**

Court of Appeals of Minnesota.

Sept. 3, 1985.

James J. Hulwi, Jr., Mankato, for Minor Child.

Ross E. Arneson, Mankato, for Blue Earth County.

Michael Karpas, Natural Father, pro se.

Linda Hoogendyk, Guardian Ad Litem for Minor Child, pro se.

John C. Peterson, Mankato, for Suzanna Jarvis.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant S.J. appeals the decision of the trial court terminating her parental rights to A.K. We affirm.

## FACTS

A.K. was born on February 2, 1970 to M.K. and S.J. who subsequently divorced. M.K. consents to the termination of his parental rights. S.J. then married A.J. and now has commenced divorce proceedings against him.

A.K. was found dependent on February 22, 1983, with the child's temporary custody being placed with the Blue Earth County Human Services. He has spent a good part of his life in foster homes. Efforts to reunite A.K. with his parents were not successful. A.K. testified that both he and his sister were physically abused by his mother's second husband and he was also abused by his mother.

A.K. doesn't talk much about his family because he feels the family structure is "crazy" and would prefer to live with a family which has some rules. He realizes that if the parental rights are terminated, the possibility exists he would remain in foster care until age 18.

A.K.'s mother seldom sees him and their visits leave him depressed. During those visits he would usually be left with the responsibility for the care of the other children.

Blue Earth County conducted group counseling sessions which S.J. periodically missed due to conflicts with her class scheduling. Additionally, an antagonistic relationship developed between the counselor, A.J. and S.J.

Visitation, part of a reunification plan, proved to be sporadic, and was not always voluntary.

The reunification plan required S.J. to provide written permission for the children to travel with their foster parents out of state but she refused so the Human Services Department substituted their permission.

A social worker testified that the efforts at family reunification had failed and that it would be in the best interests of A.K. to have the parental rights terminated and provide A.K. with a home relationship of stability and permanency.

## ISSUE

Did the trial court err in terminating S.J.'s parental rights?

## ANALYSIS

The standard of review in parental termination cases is whether a trial court's findings of fact are supported by clear and convincing evidence and those findings will not be overturned unless clearly erroneous. *In re Solomon*, 291 N.W.2d 364, 367 (Minn.1980); *In re Welfare of Adams*, 352 N.W.2d 105, 106 (Minn. Ct.App.1984), *pet. for rev. denied*, (Minn. Nov. 8, 1984).

Before parental rights can be terminated, strict statutory factors must be met. The trial court relied on three of the statutory requirements for termination:

The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:

\* \* \* \* \* \*

(b) If it finds that one or more of the following conditions exist:

\* \* \* \* \* \*

(2) That the parent has substantially, continuously, or repeatedly refused or

neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental or emotional health and development, if the parent is physically and financially able; or

\* \* \* \* \* \*

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

\* \* \* \* \* \*

(7) That the child is neglected and in foster care.

Minn.Stat. § 260.221(b)(2), (5) and (7) (1984).

■ Here, the evidence supports the court's finding and conclusion that S.J.'s parental rights should be terminated for failure to take reasonable efforts to correct the conditions leading to A.K.'s dependency.

Specific goals were set by the reunification plan. S.J. was to attend counseling sessions, grant permission to A.K. to travel with his foster parents and to visit with some regularity. None of these goals were successfully accomplished.

■ The court need find only one of the statutory conditions exists to terminate parental rights. *In re R.M.M.*, 316 N.W.2d 538, 541 (Minn.1982). For this reason, we need not decide whether the trial court's determination to terminate S.J.'s parental rights was supported under section 260.-221(b)(2) and (7).

### DECISION

Clear and convincing evidence supports the trial court's determination that the mother's parental rights should be terminated for failure to correct the conditions which led to the dependency determination.